UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JULIE MACK, JOANNE MULLINS, and
INGRID COX on behalf of themselves and all
others similarly situated,

                          Plaintiffs,

      vs.

MCG Health, LLC,

                       Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Julie Mack, Joanne Mullins, and Ingrid Cox (collectively "Plaintiffs") individually and on behalf of all others similarly situated, through undersigned counsel, hereby allege the following against Defendant MCG Health, LLC ("MCG Health" or "Defendant"). The facts pertaining to Plaintiffs are alleged based upon personal knowledge, and all other facts herein are alleged based upon information and belief and the investigation of Plaintiffs' counsel.

## NATURE OF THE ACTION

1.     This is a class action for damages with respect to MCG Health, LLC for its failure to exercise reasonable care in securing and safeguarding patients' sensitive personal data— including names, Social Security numbers, medical codes, postal addresses, telephone numbers, email addresses, dates of birth, and gender ("PII" or "Private Information").

2.     This class action is brought on behalf of patients whose sensitive PII was stolen by cybercriminals in a cyber-attack on MCG Health's systems that took place in or around

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

CLASS ACTION COMPLAINT- 1

March 25, 2020 and which resulted in the access and exfiltration of sensitive patient information (the "Data Breach").[1]

3.     MCG Health reported to Plaintiffs and members of the putative "Class" (defined below) that information compromised in the Data Breach included their PII.

4.     Plaintiffs and Class members were not notified of the data breach until, at the earliest, June of 2022—at least two years after their Private Information was first accessed.

5.     As a result of the Data Breach and Defendant's failure to promptly notify Plaintiffs and Class members of the Data Breach, Plaintiffs and Class members have experienced and will experience various types of misuse of their PII in the coming months and years, including but not limited to, unauthorized credit card charges, unauthorized access to email accounts, identity theft, and other fraudulent use of their Private Information.

6.     There has been no assurance offered by MCG Health that all personal data or copies of data have been recovered or destroyed.

7.     Accordingly, Plaintiffs assert claims for negligence, breach of contract, breach of implied contract, breach of fiduciary duty, declaratory and injunctive relief, and state consumer protection claims.

## **PARTIES**

**A.     Plaintiff Julie Mack**

8.     Plaintiff Julie Mack is a resident and citizen of Dallas, Texas and brings this action in her individual capacity and on behalf of all others similarly situated.  Plaintiff Mack was an employee at Dallas Medical Center and has also received healthcare services through Dallas Medical Center in the past, including a visit to the hospital's emergency department in early 2020.  To receive services at MCG Health, Plaintiff Mack was required to disclose her Private Information, which was then entered into MCG Health's database and maintained without her knowledge. In maintaining her Private Information, Defendant expressly and

---

[1] *MCG Health, LLC Data Breach Notification Listing*, MT. DEP'T OF JUSTICE, https://dojmt.gov/consumer/databreach/ (follow "View Data Breaches Reported to Montana Office of Consumer Protection" hyperlink; then search for "MCG Health, LLC") (last visited July 5, 2022).

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

impliedly promised to safeguard Plaintiff Mack's Private Information.  Defendant, however, did not take proper care of Plaintiff Mack's Private Information, leading to its exposure to, and exfiltration by cybercriminals as a direct result of Defendant's inadequate security measures.

9.      In June of 2022, Plaintiff Mack received a notification letter from Defendant stating that her Private Information was compromised by cybercriminals.

10.      Plaintiff Mack and Class members have faced and will continue to face a certainly impending and substantial risk of a slew of future harms as a result of Defendant's ineffective data security measures, as further set forth herein.  Some of these harms will include fraudulent charges, medical procedures ordered in patients' names without their permission, and targeted advertising without patient consent.

11.      Some of these harms will not materialize for years after the Data Breach incident, rendering Defendant's notice letter woefully inadequate to prevent the fraud that will continue to occur through the misuse of Class members' information.

12.      Plaintiff Mack greatly values her privacy, especially while receiving medical services, and would not have paid the amount that she did to receive medical services had she known that her healthcare providers' data processor, MCG Health, would negligently maintain her Private Information as it did.

**B.      Plaintiff Joanne Mullins**

13.      Plaintiff Joanne Mullins is a resident and citizen of Bellvile, Texas, and brings this action in her individual capacity and behalf of all others similarly situated. Plaintiff Mullins is a regular patient of Catholic Health Initiatives medical facilities including the Catholic Health Initiatives St. Joseph Health facility in Bellville, Texas for regular doctor and specialist visits. To receive services at MCG Health, Plaintiff Mullins was required to disclose her Private Information, which was then entered into MCG Health's database and maintained without her knowledge. In maintaining her Private Information, Defendant expressly and impliedly promised to safeguard Plaintiff Mullins' Private Information.  Defendant, however, did not take proper

CLASS ACTION COMPLAINT- 3

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

care of Plaintiff Mullins' Private Information, leading to its exposure to, and exfiltration by cybercriminals as a direct result of Defendant's inadequate security measures.

14.     In June of 2022, Plaintiff Mullins received a notification letter from Defendant stating that her Private Information was compromised by cybercriminals.

15.     Plaintiff Mullins and Class members have faced and will continue to face a certainly impending and substantial risk of a slew of future harms as a result of Defendant's ineffective data security measures, as further set forth herein.  Some of these harms will include fraudulent charges, medical procedures ordered in patients' names without their permission, and targeted advertising without patient consent.

16.     These harms are not just theoretical. On September 23, 2021, an unauthorized actor used Plaintiff Mullins' PayPal account to charge $375 to her credit card for a denim jacket from a vendor called "Axel Arigato AB." Plaintiff Mullins did not make or authorize these charges. The product was scheduled to be shipped to an address in Bellflower, California. Plaintiff Mullins noticed the fraudulent charges on her account, and was able to file a "return to sender" request through UPS to send the item back to the seller before it was delivered to the fraudulently entered address that the hacker entered in her PayPal account. The credit card charge, however, remained on her account statement, resulting in Plaintiff Mullins spending approximately three hours reporting this fraudulent charge to PayPal customer service and filing an identity theft report with the Federal Trade Commission.

17.     Given the fact that Plaintiff Mullins' Private Information was used to effectuate fraudulent charges on her credit card, she has suffered misuse of her information as a result of data breach on MCG Health's systems.

18.     Fraudulent charges on a person's credit card are just one example of how cybercriminals can use individual's Private Information to perpetrate identity theft. Some of these harms will not materialize for years after the Data Breach incident, rendering Defendant's notice letter woefully inadequate to prevent the fraud that will continue to occur through the misuse of Class members' information.

CLASS ACTION COMPLAINT- 4

19.     Plaintiff Mullins greatly values her privacy, especially while receiving medical services, and would not have paid the amount that she did to receive medical services had she known that her healthcare providers' data processor, MCG Health, would negligently maintain her Private Information as it did.

**C.     Plaintiff Ingrid Cox**

20.     Plaintiff Ingrid Cox is a citizen and resident of Slidell, Louisiana, and brings this action in her individual capacity and behalf of all others similarly situated. Plaintiff Cox is a regular patient of medical facilities around Slidell, Louisiana for regular doctor and specialist visits, but otherwise does not know how MCG Health would have obtained her information. To receive services at MCG Health, Plaintiff Cox was required to disclose her Private Information, which was then entered into MCG Health's database and maintained without her knowledge. In maintaining her Private Information, Defendant expressly and impliedly promised to safeguard Plaintiff Cox's Private Information.  Defendant, however, did not take proper care of Plaintiff Cox's Private Information, leading to its exposure to, and exfiltration by cybercriminals as a direct result of Defendant's inadequate security measures.

21.     In June of 2022, Plaintiff Cox received a notification letter from Defendant stating that her Private Information was compromised by cybercriminals.

22.     Plaintiff Cox and Class members have faced and will continue to face a certainly impending and substantial risk of a slew of future harms as a result of Defendant's ineffective data security measures, as further set forth herein.  Some of these harms will include fraudulent charges, medical procedures ordered in patients' names without their permission, and targeted advertising without patient consent.

23.     Some of these harms will not materialize for years after the Data Breach incident, rendering Defendant's notice letter woefully inadequate to prevent the fraud that will continue to occur through the misuse of Class members' information.

24.     Plaintiff Cox greatly values her privacy, especially while receiving medical services, and would not have paid the amount that she did to receive medical services had she

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  known that her healthcare providers' data processor, MCG Health, would negligently maintain

2  her Private Information as it did.

3  **D.      Defendant MCG Health**

4       25.      Defendant MCG Health is a clinical guidance company that uses software to

5  apply medical literature and data to patient information at healthcare organizations and insurance

6  companies to create care guidelines. MCG Health has a principal place of business at 901 5th

7  Avenue, Suite 120, in Seattle, Washington. MCG Health's corporate policies and practices,

8  including those used for data privacy, are established in, and emanate from the state of

9  Washington.

10                                    **JURISDICTION AND VENUE**

11       26.      The Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2),

12  because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a

13  state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds

14  $5,000,000, exclusive of interest and costs.

15       27.      The Court has personal jurisdiction over Defendant because Defendant's principal

16  place of business is located in this District.

17       28.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant

18  maintains its principal place of business in this District and therefore resides in this District

19  pursuant to 28 U.S.C. § 1391(c)(2). A substantial part of the events or omissions giving rise to

20  the Class's claims also occurred in this District.

21                                              **FACTS**

22       29.      Defendant provides software services to healthcare facilities and insurance

23  companies.  As part of its business, Defendant was entrusted with, and obligated to safeguard

24  and protect the Private Information of, Plaintiffs and the Class in accordance with all applicable

25  laws.

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

30.     In March of 2022, Defendant first learned of an unauthorized activity on its network, which contained patients' Private Information. Defendant posted the following form notice on the Montana Attorney General's data breach monitoring page:[2]

> MCG Health, LLC ("MCG") provides patient care guidelines to health care providers and health plans, including . . . We are writing on behalf of . . . to notify you of a recent data security issue at MCG that affects certain of your personal information.
>
> MCG determined on March 25, 2022 that an unauthorized party previously obtained certain of your personal information that matched data stored on MCG's systems.  The affected patient or member data included some or all of the following data elements: names, Social Security numbers, medical codes, postal addresses, telephone numbers, email addresses, dates of birth and gender.
>
> Upon learning of this issue, we took steps to understand its nature and scope.  A leading forensic investigation firm was retained to assist in the investigation.  Additionally, we are coordinating with the FBI.  We have deployed additional monitoring tools and will continue to enhance the security of our systems.
>
> We regret any concern this issue may cause.  We are alerting you about this issue so you can take steps to help protect your information.  You are entitled under U.S. law to one free credit report annually from each of the three nationwide consumer reporting agencies.  To order your free credit report, visit www.annualcreditreport.com or call toll-free at 1-877-322-8228. We encourage you to remain vigilant by reviewing your account statements and monitoring your free credit reports.
>
> In addition, we have arranged to offer you identity protection and credit monitoring services for two years at no cost to you.  The attached Reference Guide provides information on activation and recommendations by the U.S. Federal Trade Commission on the protection of personal information

[2] *MCG Health, LLC Data Breach Notification*, https://media.dojmt.gov/wp-content/uploads/Consumer-Notification-Letter-182.pdf (last visited July 5, 2022) [hereinafter *Data Breach Notice*].

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

CLASS ACTION COMPLAINT- 7

31.     Upon learning of the Data Breach that occurred in February of 2020, Defendant investigated and began sending notification of the incident to affected patients.[3]  Plaintiffs were not notified that their information was affected in the Data Breach until June of 2022.

32.     In June of 2022, approximately two years after the Data Breach, Defendant first announced that it suffered a cyberattack that allowed an unauthorized individual to obtain the Private Information of patients within the company's computer systems. The June 2022 notification that Defendant posted on the Health and Human Services portal did not explain what type of attack had occurred, what type of information had been affected, or any of the other circumstances surrounding the data breach.

33.     In addition, Defendant offered no explanation for the delay between the initial discovery of the Breach and the belated notification to affected customers, which resulted in Plaintiffs and Class members suffering harm they otherwise could have avoided had a timely disclosure been made.

34.     Defendant's delay in notifying its customers affected by the Data Breach violated the provisions of, *inter alia,* Washington Rev. Code § 19.25.010, *et seq.*, requiring Defendant to provide prompt and direct notice of a data security breach to affected consumers within 30 days.

35.     MCG Health's notice of the Data Breach was woefully deficient, failing to provide basic details, including but not limited to, how unauthorized parties accessed its networks, whether the information was encrypted or otherwise protected, how it learned of the Data Breach, whether the breach occurred system-wide, whether servers storing information were accessed, and how many customers were affected by the Data Breach.  Even worse, MCG Health offered only two years of identity monitoring to Plaintiffs and Class members, which required the disclosure of additional PII that MCG Health had just demonstrated it could not be trusted with.

---

[3]*See Cases Currently Under Investigation*, U.S. DEP'T OF HEALTH & HUMAN SERVS.: BREACH PORTAL, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf [hereinafter *Breach Portal*] (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

36.      In light of the types of personal information at issue, and the fact that the Private Information was specifically targeted by cybercriminals with the intent to steal and misuse it, it can reasonably assumed that Plaintiffs' and Class members' PII is being sold on the dark web, meaning that unauthorized parties have accessed, viewed, and exfiltrated Plaintiffs' and Class members' unencrypted, unredacted, sensitive personal information, including names, addresses, email addresses, dates of birth, Social Security numbers, member ID numbers, policyholder names, employer names, policy numbers, and more as a result of Defendant's lax data security practices and protocols.

37.      The Data Breach occurred because Defendant failed to take reasonable measures to protect the PII it collected and stored. Among other things, Defendant failed to implement data security measures designed to prevent this attack, despite repeated warnings to the healthcare industry, insurance companies, and associated entities about the risk of cyberattacks and the highly publicized occurrence of many similar attacks in the recent past on other healthcare providers.

38.      Defendant disregarded the rights of Plaintiffs and Class members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiffs and Class members' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiffs and Class members was compromised through unauthorized access by an unknown third party. Plaintiffs and Class members have a continuing interest in ensuring that their information is and remains safe.

A.      **Defendant Failed to Maintain Reasonable and Adequate Security Measures to Safeguard Patient Private Information**

39.      As noted above, MCG Health acquires, collects, and stores a massive amount of its customers' patients' protected PII, including health information and other personally identifiable data.

CLASS ACTION COMPLAINT- 9

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

40.     As a condition of engaging in health-related services, MCG Health requires that its customers entrust it with their patients' highly confidential Private Information.

41.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs and Class members' Private Information, MCG Health assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs and Class members' Private Information from disclosure.

42.     Defendant had obligations created by the Health Insurance Portability and Accountability Act (42 U.S.C. § 1320d *et seq.*) ("HIPAA"), Washington law (Wash. Rev. Code. § 19.255.010, *et seq.*), industry standards, common law, and representations made to Class members, to keep Class members' Private Information confidential and to protect it from unauthorized access and disclosure.

43.     As evidenced by Defendant's failure to comply with its legal obligations established by HIPAA and Washington law, Defendant failed to properly safeguard Class members' Private Information, allowing hackers to access their Private Information.

44.     Plaintiffs and Class members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant and any of its affiliates would comply with their obligation to keep such information confidential and secure from unauthorized access.

45.     Prior to and during the Data Breach, Defendant promised its customers that their patients' Private Information would be kept confidential.

46.     Defendant's failure to provide adequate security measures to safeguard patients' Private Information is especially egregious because Defendant operates in a field which has recently been a frequent target of scammers attempting to fraudulently gain access to customers' highly confidential Private Information.

47.     In fact, Defendant has been on notice for years that the healthcare industry is a prime target for scammers because of the amount of confidential patient information maintained.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

48.     Defendant was also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[4]

49.     The American Medical Association ("AMA") has also warned healthcare companies about the important of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[5]

50.     The number of US data breaches surpassed 1,000 in 2016, a record high and a forty percent increase in the number of data breaches from the previous year.[6]  In 2017, a new record high of 1,579 breaches were reported—representing a 44.7 percent increase.[7]  That trend continues.

51.     The healthcare sector reported the second largest number of breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[8] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential.

---

[4] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warnshealthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last visited July 5, 2022).
[5] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AM. MED. ASS'N (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (last visited July 5, 2022).
[6]  Identity Theft Resource Center, *Data Breaches Increase 40 Percent in 2016, Finds New Report From Identity Theft Resource Center and CyberScout* (Jan. 19, 2017), https://www.idtheftcenter.org/surveys-studys (last visited July 5, 2022).
[7] Identity Theft Resource Center, *2017 Annual Data Breach Year-End Review*, https://www.idtheftcenter.org/2017-data-breaches/ (last visited July 5, 2022).
[8] Identity Theft Resource Center, *2018 End -of-Year Data Breach Report*, https://www.idtheftcenter.org/2018-data-breaches/ (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[9] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[10]

52.     A 2017 study conducted by HIMSS Analytics showed that email was the most likely cause of a data breach, with 78 percent of providers stating that they experienced a healthcare ransomware or malware attack in the past 12 months.

53.     Healthcare related data breaches continued to rapidly increase into 2020 when MCG Health was breached.[11]

54.     In the Healthcare industry, the number one threat vector from a cyber security standpoint is phishing. Cybersecurity firm Proofpoint reports that "phishing is the initial point of compromise in most significant [healthcare] security incidents," according to a recent report from the Healthcare Information and Management Systems Society (HIMSS). And yet, 18% of healthcare organizations fail to conduct phishing tests, a finding HIMSS describes as "incredible."[12]

55.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precaution for protection."[13]

---

[9] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited July 5, 2022).
[10] *Id.*
[11] *2019 HIMSS Cybersecurity Survey*, https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf (last visited July 5, 2022).

[12] Aaron Jensen, *Healthcare Phishing Statistics: 2019 HIMSS Survey Results*, PROOFPOINT (Mar. 27, 2019), https://www.proofpoint.com/us/security-awareness/post/healthcare-phishing-statistics-2019-himss-survey-results (last visited July 5, 2022).
[13] *See How to Protect Your Networks from RANSOMWARE*, FBI (2016) https ://www. fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

56.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program.  Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege; no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

57.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- **Update and patch your computer.** Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks . . .

- **Use caution with links and when entering website addresses.** Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself.  Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net) . . .

- **Open email attachments with caution.** Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

- **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it . . .

- **Verify email senders.** If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself.** Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs.** Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic . . .[14]

58.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- **Secure internet-facing assets**
  - Apply the latest security updates
  - Use threat and vulnerability management
  - Perform regular audit; remove privilege credentials

- **Thoroughly investigate and remediate alerts**
  - Prioritize and treat commodity malware infections as potential full compromise

- **Include IT Pros in security discussions**
  - Ensure collaboration among [security operations], [security admins], and [information

---

[14] *See Security Tip (ST19-001) Protecting Against Ransomware*, CYBERSECURITY & INFRASTRUCTURE SECURITY AGENCY (Apr. 11, 2019), https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

technology] admins to configure servers and other endpoints securely

-   **Build credential hygiene**
    - use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

-   **Apply principle of least-privilege**
    - Monitor for adversarial activities
    - Hunt for brute force attempts
    - Monitor for cleanup of Event Logs
    - Analyze logon events

-   **Harden infrastructure**
    - Use Windows Defender Firewall
    - Enable tamper protection
    - Enable cloud-delivered protection
    - Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[15]

59.     These are basic, common-sense email security measures that every business, not only healthcare businesses, should be doing. MCG Health, with its heightened standard of care should be doing even more. But by adequately taking these common-sense measures, MCG Health could have prevented this Data Breach from occurring.

60.     Charged with handling sensitive PII including healthcare information, MCG Health knew, or should have known, the importance of safeguarding its customers' patients' Private Information that was entrusted to it and of the foreseeable consequences if its data security systems were breached.  This includes the significant costs that would be imposed on the patients in MCG Health's database as a result of a breach. MCG Health failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[15] *See Human-operated ransomware attacks: A preventable disaster*, MICROSOFT (Mar. 5, 2020), https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

61.     With respect to training, MCG Health specifically failed to:

- Implement a variety of anti-ransomware training tools, in combination, such as computer-based training, classroom training, monthly newsletters, posters, login alerts, email alerts, and team-based discussions;

- Perform regular training at defined intervals such as bi-annual training and/or monthly security updates; and

- Craft and tailor different approaches to different employees based on their base knowledge about technology and cybersecurity.

62.     The PII was also maintained on MCG Health's computer system in a condition vulnerable to cyberattacks such as through the infiltration of Defendant's systems through ransomware attacks.  The mechanism of the cyberattack and the potential for improper disclosure of Plaintiffs and Class members' PII was a known risk to MCG Health, and thus MCG Health was on notice that failing to take reasonable steps necessary to secure the PII from those risks left the PII in a vulnerable position.

**B.     The Monetary Value of Privacy Protections and Private Information**

63.     The fact that Plaintiffs and Class members' Private Information was stolen means that Class members' information is likely for sale by cybercriminals and will be misused in additional instances in the future.

64.     At all relevant times, Defendant was aware that Private Information it collects from Plaintiffs and Class members is highly sensitive and of significant value to those who would use it for wrongful purposes.

65.     Private Information is a valuable commodity to identity thieves.  As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[16]  Indeed, a robust "cyber black market" exists in

---

[16] Federal Trade Commission, *Warning Signs of Identity Theft* (Sept. 2018), https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft  (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

which criminals openly post stolen PII including sensitive health information on multiple

underground Internet websites, commonly referred to as the dark web.

66.     At an FTC public workshop in 2001, then-Commissioner Orson Swindle

described the value of a consumer's personal information:

> The use of third party information from public records, information
> aggregators and even competitors for marketing has become a
> major facilitator of our retail economy.  Even [Federal Reserve]
> Chairman [Alan] Greenspan suggested here some time ago that it's
> something on the order of the life blood, the free flow of
> information.[17]

67.     Commissioner Swindle's 2001 remarks are even more relevant today, as

consumers' personal data functions as a "new form of currency" that supports a $26 Billion per

year online advertising industry in the United States.[18]

68.     The FTC has also recognized that consumer data is a new (and valuable) form of

currency. In an FTC roundtable presentation, another former Commissioner, Pamela Jones

Harbour, underscored this point:

> Most consumers cannot begin to comprehend the types and amount
> of information collected by businesses, or why their information
> may be commercially valuable. Data is currency.  The larger the
> data set, the greater potential for analysis—and profit.[19]

69.     Recognizing the high value that consumers place on their Private Information,

many companies now offer consumers an opportunity to sell this information.[20]  The idea is to

give consumers more power and control over the type of information that they share and who

---

17 *Public Workshop: The Information Marketplace: Merging and Exchanging Consumer Data*, FED. TRADE
COMM'N Tr. at 8:2-8 (Mar. 13, 2001), https://www.ftc.gov/sites/default/files/documents/public_events/information-
marketplace-merging-and-exchanging-consumer-data/transcript.pdf (last visited July 5, 2022).
18 *See* Julia Angwin & Emily Steel, *Web's Hot New Commodity: Privacy*, The Wall Street Journal (Feb. 28, 2011),
https://www.wsj.com/articles/SB10001424052748703529004576160764037920274 (last visited July 5, 2022)
[hereinafter *Web's New Hot Commodity*].
19 *Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable*,
FED. TRADE COMM'N (Dec. 7, 2009), https://www.ftc.gov/sites/default/files/documents/public_
statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last visited July 5, 2022).
20 *Web's Hot New Commodity*, *supra* note 17.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ultimately receives that information.  And, by making the transaction transparent, consumers will make a profit from their Private Information.  This business has created a new market for the sale and purchase of this valuable data.

70.     Consumers place a high value not only on their Private Information, but also on the privacy of that data.  Researchers have begun to shed light on how much consumers value their data privacy, and the amount is considerable. Indeed, studies confirm that the average direct financial loss for victims of identity theft in 2014 was $1,349.[21]

71.     The value of Plaintiffs and Class members' Private Information on the black market is substantial. Sensitive health information can sell for as much as $363.[22] This information is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

72.     Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[23]

73.     The ramifications of MCH Health's failure to keep its customers' patients' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent

---

21 *See* U.S. Dep't of Justice, *Victims of Identity Theft,* OFFICE OF JUSTICE PROGRAMS: BUREAU OF JUSTICE STATISTICS 1 (Nov. 13, 2017), https://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited July 5, 2022) [hereinafter *Victims of Identity Theft*].
22 Center for Internet Security, *Data Breaches: In the Healthcare Sector*, https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector / (last visited July 5, 2022).
23 Michael Ollove, *The Rise of Medical Identity Theft in Healthcare*, KAISER (Feb. 7, 2014) https://khn.org/news/rise-of-indentity-theft/ (last visited July 5, 2022).

CLASS ACTION COMPLAINT- 19

1    use of that information and damage to victims may continue for years. Fraudulent activity might

2    not show up for 6 to 12 months or even longer.

3    74.    Approximately 21% of victims do not realize their identity has been compromised

4    until more than two years after it has happened.[24] This gives thieves ample time to seek multiple

5    treatments under the victim's name. Forty percent of consumers found out they were a victim of

6    medical identity theft only when they received collection letters from creditors for expenses that

7    were incurred in their names.[25]

8    75.    Breaches are particularly serious in healthcare industries. The healthcare sector

9    reported the second largest number of breaches among all measured sectors in 2018, with the

10   highest rate of exposure per breach.[26] Indeed, when compromised, healthcare related data is

11   among the most private and personally consequential. A report focusing on healthcare breaches

12   found that the "average total cost to resolve an identity theft-related incident . . . came to about

13   $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they

14   did not receive in order to restore coverage.[27] Almost 50% of the surveyed victims lost their

15   healthcare coverage as a result of the incident, while nearly 30% said their insurance premiums

16   went up after the event. Forty percent of the victims were never able to resolve their identity theft

17   at all. Seventy-four percent said that the effort to resolve the crime and restore their identity was

18   significant or very significant. Data breaches and identity theft have a crippling effect on

19   individuals and detrimentally impact the economy as a whole.[28]

20   76.    At all relevant times, Defendant was well-aware, or reasonably should have been

21   aware, that the Private Information it maintains is highly sensitive and could be used for

22

23   [24] *See Medical ID Theft Checklist*, IDENTITYFORCE https://www.identityforce.com/blog/medical-id-theft-checklist-2.
     [25] *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches*, EXPERIAN,

24   (Apr. 2010), https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-
     healthcare.pdf (last visited July 5, 2022).

25   [26] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report*, (2019) https://www.idtheftcenter.org/wp-
     content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_V2_combinedWEB.pdf (last visited July 5,

26   2022).
     [27] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010),

27   https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited July 5, 2022).
     [28] *Id.*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  wrongful purposes by third parties, such as identity theft and fraud.  Defendant should have

2  particularly been aware of these risks, given the significant number of data breaches affecting the

3  health care industry and related industries.

4       77.     Had Defendant remedied the deficiencies in its security systems, followed

5  industry guidelines, and adopted security measures recommended by experts in the field,

6  Defendant would have prevented the ransomware attack into its systems and, ultimately, the theft

7  of the Private Information of patients within its systems.

8       78.     The compromised Private Information in the Data Breach is of great value to

9  hackers and thieves and can be used in a variety of ways. Information about, or related to, an

10  individual for which there is a possibility of logical association with other information is of great

11  value to hackers and thieves. Indeed, "there is significant evidence demonstrating that

12  technological advances and the ability to combine disparate pieces of data can lead to

13  identification of a consumer, computer or device even if the individual pieces of data do not

14  constitute PII."[29] For example, different PII elements from various sources may be able to be

15  linked in order to identify an individual, or access additional information about or relating to the

16  individual.[30] Based upon information and belief, the unauthorized parties have already and will

17  continue utilize the Private Information they obtained through the Data Breach to obtain

18  additional information from Plaintiffs and Class members that can be misused.

19       79.     In addition, as technology advances, computer programs may scan the Internet

20  with wider scope to create a mosaic of information that may be used to link information to an

21  individual in ways that were not previously possible. This is known as the "mosaic effect."

22       80.     Names and dates of birth, combined with contact information like telephone

23  numbers and email addresses, are very valuable to hackers and identity thieves as it allows them

24

25  [29] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers, Preliminary FTC Staff Report*, FED. TRADE COMM'N 35-38 (Dec. 2010),

26  https://www.ftc.gov/reports/preliminary-ftc-staff-report-protecting-consumer-privacy-era-rapid-change-proposed-framework (last visited July 5, 2022).

27  [30] *See id.* (evaluating privacy framework for entities collecting or using consumer data with can be "reasonably linked to a specific consumer, computer, or other device").

CLASS ACTION COMPLAINT- 21

to access users' other accounts. Thus, even if payment card information were not involved in the Data Breach, the unauthorized parties could use Plaintiffs and Class members' Private Information to access accounts, including, but not limited to email accounts and financial accounts, to engage in the fraudulent activity identified by Plaintiffs.

81.     Given these facts, any company that transacts business with customers and then compromises the privacy of customers' Private Information has thus deprived customers of the full monetary value of their transaction with the company.

82.     Acknowledging the damage to Plaintiffs and Class members, Defendant instructed affected patients like Plaintiffs to "notify the consumer reporting agencies of any inaccuracies in [Plaintiffs' credit] report[s], whether due to error or fraud, as soon as possible so the information can be investigated and, if found to be in error, corrected." Plaintiffs and the other Class members now face a greater risk of identity theft.

83.     In short, the Private Information exposed is of great value to hackers and cyber criminals and the data compromised in the Data Breach can be used in a variety of unlawful manners, including opening new credit and financial accounts in users' names.

## C.     MCG Health's Conduct Violated HIPPA

84.     HIPAA requires covered entities like MCG Health protect against reasonably anticipated threats to the security of PHI. Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.[31]

85.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Private Information like the data Defendant left unguarded. The HHS has subsequently

---

[31] *What is Considered Protected Health Information Under HIPAA?*, HIPPA JOURNAL, https://www.hipaajournal.com/what-is-considered-protected-health-information-under-hipaa/ (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

86.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendant to provide notice of the breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[32]

87.     Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations. MCG Health's security failures include, but are not limited to, the following:

- Failing to ensure the confidentiality and integrity of electronic protected health information that Defendant creates, receives, maintains, and transmits in violation of 45 C.F.R. §164.306(a)(1);

- Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. §164.312(a)(1);

- Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. §164.308(a)(1);

- Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. §164.308(a)(6)(ii);

- Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. §164.306(a)(2);

- Failing to protect against any reasonably anticipated uses or disclosures of electronically protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. §164.306(a)(3);

---

[32] *Breach Notification Rule*, U.S. DEP'T HEALTH & HUMAN SERVS., https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

- Failing to ensure compliance with HIPAA security standard rules by their workforce in violation of 45 C.F.R. §164.306(a)(94);

- Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 C.F.R. §164.502, *et seq.*;

- Failing to effectively train all members of their workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. §164.530(b) and 45 C.F.R. §164.308(a)(5); and

- Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 C.F.R. §164.530(c).

**D.      MCG Health Failed to Comply with FTC Guidelines**

88.      MCG Health was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 247 (3d Cir. 2015).

89.      The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[33]

---

[33]     *Start With Security: A Guide for Business*, FED. TRADE. COMM'N (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited July 5, 2022) [hereinafter *Start with Security*].

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

90.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[34] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

91.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[35]

92.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

93.     MCG Health was at all times fully aware of its obligation to protect the Private Information of the patients in its database because of its position as a healthcare data processor. MCG Health was also aware of the significant repercussions that would result from its failure to do so.

94.     As evidenced by Defendant's failure to comply with its legal obligations established by the FTC Act, Defendant failed to properly safeguard Class members' Private Information, allowing hackers to access their Private Information.

---

[34] *Protecting Personal Information: A Guide for Business*, FED. TRADE. COMM'M (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited July 5, 2022).
[35] *Start with Security*, *supra* note 32.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**E.      MCG Health Failed to Comply with Healthcare Industry Standards**

95.      HHS's Office for Civil Rights has stated:

> While all organizations need to implement policies, procedures, and
> technical solutions to make it harder for hackers to gain access to their
> systems and data, this is especially important in the healthcare industry.
> Hackers are actively targeting healthcare organizations, as they store
> large quantities of highly Private and valuable data.[36]

96.      HHS highlights several basic cybersecurity safeguards that can be implemented to improve cyber resilience that require a relatively small financial investment yet can have a major impact on an organization's cybersecurity posture including: (a) the proper encryption of Private Information; (b) educating and training healthcare employees on how to protect Private Information; and (c) correcting the configuration of software and network devices.

97.      Private cybersecurity firms have also identified the healthcare sector as being particularly vulnerable to cyber-attacks, both because the of the value of the Private Information which they maintain and because as an industry they have been slow to adapt and respond to cybersecurity threats.[37] They too have promulgated similar best practices for bolstering cybersecurity and protecting against the unauthorized disclosure of Private Information.

98.      Despite the abundance and availability of information regarding cybersecurity best practices for the healthcare industry, MCG Health chose to ignore them. These best practices were known, or should have been known by MCG Health, whose failure to heed and properly implement them directly led to the Data Breach and the unlawful exposure of Private Information.

**F.      Damages to Plaintiffs and the Class**

99.      Plaintiffs and the Class have been damaged by the compromise of their Private Information in the Data Breach.

---

[36] *Cybersecurity Best Practices for Healthcare Organizations*, HIPAA JOURNAL (Nov. 1, 2018), https://www.hipaajournal.com/important-cybersecurity-best-practices-for-healthcare-organizations/ (last visited July 5, 2022).
[37] *See, e.g.*, *10 Best Practices For Healthcare Security*, INFOSEC, https://resources.infosecinstitute.com/topics/healthcare-information-security/#gref (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

100.    The ramifications of MCG Health's failure to keep patients' Private Information secure are long lasting and severe.  Once Private Information is stolen, fraudulent use of that information and damage to the victims may continue for years.  Consumer victims of data breaches are more likely to become victims of identity fraud.[38]

101.    In addition to their obligations under state and federal laws and regulations, Defendant owed a common law duty to Plaintiffs and Class members to protect Private Information entrusted to it, including to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized parties.

102.    Defendant further owed and breached its duty to Plaintiffs and Class members to implement processes and specifications that would detect a breach of its security systems in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

103.    As a direct result of Defendant's intentional, willful, reckless, and negligent conduct which resulted in the Data Breach, unauthorized parties were able to access, acquire, view, publicize, and/or otherwise commit the identity theft and misuse of Plaintiffs and Class members' Private Information as detailed above, and Plaintiffs and members of the Class are at a heightened and increased substantial risk of suffering, identity theft and fraud.

104.    The risks associated with identity theft are serious. While some identity theft victims can resolve their problems quickly, others spend hundreds to thousands of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit.

---

[38] *2014 LexisNexis True Cost of Fraud Study*, LexisNexis (Aug. 2014), https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

105.     Some of the injuries and risks associated with the loss of personal information have already manifested themselves in Plaintiffs and other Class members' lives. Plaintiffs received a cryptically written notice letter from Defendant stating that their information was released, and that they should remain vigilant for fraudulent activity on her accounts, with no other explanation of where this information could have gone, or who might have access to it. Additionally, they have already spent hours on the phone trying to determine what additional negative effects may occur from the loss of her personal information, and now face a certainly impending and substantial risk of a slew of future harms. Additionally, unauthorized actors hacked into Plaintiff Mullins' PayPal account and charged her credit card for hundreds of dollars' worth of merchandise without her authorization. It is therefore indisputable that Plaintiffs have suffered harm as a result of the loss of their personal information in the data breach incident.

106.     Additionally, Plaintiffs and the Class have suffered and continue to face a substantial risk of suffering out-of-pocket fraud losses such as fraudulent charges on online accounts, credit card fraud, applications for benefits made fraudulent in their names, loans opened in their names, medical services billed in their names, and identity theft.

107.     Plaintiffs and Class members have, may have, and/or will have incurred out of pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

108.     Plaintiffs and Class members did not receive the full benefit of their bargain when paying for medical services, and instead received services that were of a diminished value to those described in their agreements with their respective healthcare institutions, which healthcare institutions entered into agreements with MCG Health that were made solely for the benefit of Plaintiffs and Class members. Plaintiffs and Class members were damaged in an amount at least equal to the difference in the value between the services they thought they paid for (which would have included adequate data security protection) and the services they actually received.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

109.    Plaintiffs and Class members would not have obtained services from their medical providers had they known that Defendant failed to properly train its employees, lacked safety controls over its computer network, and did not have proper data security practices to safeguard their Private Information from criminal theft and misuse.

110.    Plaintiffs and the Class will continue to spend significant amounts of time to monitor their financial and medical accounts for misuse.

111.    The theft of Social Security Numbers is particularly detrimental to victims.  The U.S. Social Security Administration ("SSA") warns that "[i]dentity theft is one of the fastest growing crimes in America."[39]  The SSA has stated that "[i]dentity thieves can use your number and your good credit to apply for more credit in your name.  Then, they use the credit cards and don't pay the bills, it damages your credit.  You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought."[40]  In short, "[s]omeone illegally using your Social Security number and assuming your identity can cause a lot of problems."[41]

112.    In fact, a new Social Security number is substantially less effective where "other personal information, such as [the victim's] name and address, remains the same" and for some victims, "a new number actually creates new problems.  If the old credit information is not associated with your new number, the absence of any credit history under your new number may make it more difficult for you to get credit."[42]

113.    Identity thieves can use the victim's Private Information to commit any number of frauds, such as obtaining a job, procuring housing, or even giving false information to police during an arrest.  In the healthcare industry context, Private Information can be used to submit false insurance claims. As a result, Plaintiffs and Class members may face a real and continuing immediate risk of identity theft and other problems associated with the disclosure of their Social

---

39 *Identity Theft and Your Social Security Number*, SOCIAL SECURITY ADMIN. (Dec. 2013), http://www.ssa.gov/pubs/EN-05-10064.pdf (last visited July 5, 2022).
[40] *Id.*
[41] *Id.*
[42] *Id.*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Security numbers and will need to monitor their credit for an indefinite duration. For Plaintiffs and Class members, this risk creates unending feelings of fear and annoyance. Private information is especially valuable to identity thieves. Defendant knew or should have known this and strengthened its data systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

114.    As a result of the Data Breach, Plaintiffs and Class members' Private Information has diminished in value.

115.    The Private Information belonging to Plaintiffs and Class members is, as its name suggests, private, and was left inadequately protected by Defendant who did not obtain Plaintiffs or Class members' consent to disclose such Private Information to any other person as required by applicable law and industry standards.  Defendant disclosed information about Plaintiffs and the Class that was of an extremely personal and sensitive nature as a direct result of its inadequate security measures.

116.     The Data Breach was a direct and proximate result of Defendant's failure to: (a) properly safeguard and protect Plaintiffs and Class members' Private Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs and Class members' Private Information; and (c) protect against reasonably foreseeable threats to the security or integrity of such information.

117.    Defendant had the resources necessary to prevent the Data Breach, but neglected to adequately implement data security measures, despite its obligation to protect customer data.

118.    Defendant did not properly train its employees, particularly its information technology department, to timely identify and/or avoid ransomware attacks.

119.    Had Defendant remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field, it would have prevented the intrusions into its systems and, ultimately, the theft of Plaintiffs and Class members' Private Information.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

120.     As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiffs and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives.

121.     The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, twenty-nine percent spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[43]

122.     Other than offering 24 months of credit monitoring to class members, Defendant did not take any measures to assist Plaintiffs and Class members other than telling them to simply do the following:

- remain vigilant for incidents of fraud and identity theft;

- review account statements and monitor credit reports for unauthorized activity;

- obtain a copy of free credit reports;

- contact the FTC and/or the state Attorney General's office;

- enact a security freeze on credit files; and

- create a fraud alert.

None of these recommendations, however, require Defendant to expend any effort to protect Plaintiffs and Class members' Private Information.

123.     Defendant's failure to adequately protect Plaintiffs and Class members' Private Information has resulted in Plaintiffs and Class members having to undertake these tasks, which require extensive amounts of time, calls, and, for many of the credit and fraud protection

---

[43] *See* U.S. Dep't of Justice, *Victims of Identity Theft*, OFFICE OF JUSTICE PROGRAMS: BUREAU OF JUSTICE STATISTICS 1 (Nov. 13, 2017), https://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited July 5, 2022) [hereinafter *Victims of Identity Theft*].

CLASS ACTION COMPLAINT- 31

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

services, payment of money–while Defendant sits by and does nothing to assist those affected by the incident. Instead, as MCG Health's Data Breach Notice indicates, it is putting the burden on Plaintiffs and Class members to discover possible fraudulent activity and identity theft.

124.    While Defendant offered two years of credit monitoring to some class members, this service does not guarantee the safety of class members' information. Thus, to mitigate harm, Plaintiffs and Class members are now burdened with indefinite monitoring and vigilance of their accounts.

125.    Moreover, the offer of 24 months of identity monitoring to some Class members is woefully inadequate. While some harm has already taken place, the worst is yet to come. There may be a time lag between when harm occurs versus when it is discovered, and between when Private Information is acquired and when it is used. Furthermore, identity theft monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's Private Information) – it does not prevent identity theft.[44] This is especially true for many kinds of medical identity theft, for which most credit monitoring plans provide little or no monitoring or protection.

126.    Plaintiffs and Class members have been damaged in several other ways as well. Plaintiffs and Class members have been exposed to an impending, imminent, and ongoing increased risk of fraud, identity theft, and other misuse of their Private Information. Plaintiffs and Class members must now and indefinitely closely monitor their financial and other accounts to guard against fraud. This is a burdensome and time-consuming task. Plaintiffs and Class members have also been forced to purchase adequate credit reports, credit monitoring and other identity protection services, and have placed credit freezes and fraud alerts on their credit reports, while also spending significant time investigating and disputing fraudulent or suspicious activity

---

[44] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, CNBC (Nov. 30, 2017), https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html (last visited July 5, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

on their accounts. Plaintiffs and Class members also suffered a loss of the inherent value of their Private Information.

127.    The Private Information stolen in the Data Breach can be misused on its own or can be combined with personal information from other sources such as publicly available information, social media, etc. to create a package of information capable of being used to commit further identity theft. Thieves can also use the stolen Private Information to send spear-phishing emails to Class members to trick them into revealing sensitive information. Lulled by a false sense of trust and familiarity from a seemingly valid sender (for example Wells Fargo, Amazon, or a government entity), the individual agrees to provide sensitive information requested in the email, such as login credentials, account numbers, and the like.

128.    As a result of Defendant's failures to prevent the Data Breach, Plaintiffs and Class members have suffered, will suffer, and are at increased risk of suffering:

- The compromise, publication, theft and/or unauthorized use of their Private Information;

- Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

- Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

- The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the Private Information in its possession;

- Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs and Class members; and

- Anxiety and distress resulting fear of misuse of their Private Information.

CLASS ACTION COMPLAINT- 33

129.    In addition to a remedy for the economic harm, Plaintiffs and Class members maintain an undeniable interest in ensuring that their Private Information remains secure and is not subject to further misappropriation and theft.

## CLASS ACTION ALLEGATIONS

130.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and/or 23(c)(4).

131.    Specifically, Plaintiffs propose the following Nationwide Class, as well as Louisiana and Texas Subclasses (collectively, the "Class") definitions:

> **Nationwide Class**
> All persons residing in the United States whose Private Information was compromised as a result of the Data Breach discovered in or about March of 2022 and who were sent notice of the Data Breach.
>
> **Louisiana Subclass**
> All persons residing in Louisiana whose Private Information was compromised as a result of the Data Breach discovered in or about March of 2022 and who were sent notice of the Data Breach.
>
> **Texas Subclass**
> All persons residing in Texas whose Private Information was compromised as a result of the Data Breach discovered in or about March of 2022 and who were sent notice of the Data Breach.

Excluded from the Class are Defendant and Defendant's affiliates, parents, subsidiaries, employees, officers, agents, and directors.  Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

132.    Plaintiffs reserve the right to modify, change, amend, or expand the definitions of the Nationwide Class, as well as the Louisiana and Texas Subclasses based upon discovery and further investigation.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

133.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

134.    **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that joinder of all Class members would be impracticable.  On information and belief, the Class numbers in millions. Moreover, the Class is composed of an easily ascertainable set of individuals and entities who were patients in Defendant's computer systems and who were impacted by the Data Breach. The precise number of Class members can be further confirmed through discovery, which includes Defendant's records. The disposition of Plaintiffs and Class members' claims through a class action will benefit the parties and this Court.

135.    **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members of the Class.  Such common questions of law or fact include, *inter alia*:

- Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

- Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

- Whether Defendant properly implemented its purported security measures to protect Plaintiffs and the Class's Private Information from unauthorized capture, dissemination, and misuse;

- Whether Defendant took reasonable measures to determine the extent of the Data Breach after it first learned of same;

- Whether Defendant disclosed Plaintiffs and the Class's Private Information in violation of the understanding that the Private Information was being disclosed in confidence and should be maintained;

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

- Whether Defendant willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiffs and the Class's Private Information;

- Whether Defendant was negligent in failing to properly secure and protect Plaintiffs and the Class's Private Information;

- Whether Defendant was unjustly enriched by its actions; and

- Whether Plaintiffs and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

136.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and other members of the Class. Similar or identical common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

137.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all Class members were similarly injured and sustained similar monetary and economic injuries as a result of Defendant's uniform misconduct described above and were thus all subject to the Data Breach alleged herein. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

138.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class he seeks to represent, they retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

139.     **Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**  Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23 (b)(2).

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

140. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.  Even if members of the Class could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

141. Class certification is also appropriate under Rules 23(b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudication that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and

c. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole.

142. Class certification is also appropriate because this Court can designate particular claims or issues for class-wide treatment and may designate multiple subclasses pursuant to Fed. R. Civ. P. 23(c)(4).

CLASS ACTION COMPLAINT- 37

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

143.    No unusual difficulties are likely to be encountered in the management of this action as a class action.

## COUNT I
## NEGLIGENCE
**(On Behalf of Plaintiffs and the Nationwide Class or, Alternatively, the Texas and Louisiana Subclasses)**

144.    Plaintiffs fully incorporate by reference all of the above paragraphs, as though fully set forth herein.

145.    Upon Defendant's accepting and storing the Private Information of Plaintiffs and the Class in its computer systems and on its networks, Defendant undertook and owed a duty to Plaintiffs and the Class to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so.  Defendant knew that the Private Information was private and confidential and should be protected as private and confidential.

146.    Defendant owed a duty of care not to subject Plaintiffs and the Class's Private Information to an unreasonable risk of exposure and theft because Plaintiffs and the Class were foreseeable and probable victims of any inadequate security practices.

147.    Defendant owed numerous duties to Plaintiffs and the Class, including the following:

- to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting Private Information in its possession;

- to protect Private Information using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

- to implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

148.    Defendant also breached its duty to Plaintiffs and Class members to adequately protect and safeguard Private Information by disregarding standard information security

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information.  Furthering its dilatory practices, Defendant failed to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted a malicious third party to gather Plaintiffs and Class members' Private Information and potentially misuse the Private Information and intentionally disclose it to others without consent.

149.    Defendant knew, or should have known, of the risks inherent in collecting and storing Private Information and the importance of adequate security. Defendant knew or should have known about numerous well-publicized data breaches within the medical industry.

150.    Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiffs and Class members' Private Information.

151.    Defendant breached its duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs and Class members' Private Information.

152.    Because Defendant knew that a breach of its systems would damage thousands of its customers' patients, including Plaintiffs and Class members, Defendant had a duty to adequately protect its data systems and the Private Information contained thereon.

153.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and Class members, which is recognized by laws and regulations including but not limited to common law.  Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class members from a data breach.

154.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

155.     Defendant also had a duty under HIPAA privacy laws, which were enacted with the objective of protecting the confidentiality of clients' healthcare information and set forth the conditions under which such information can be used, and to whom it can be disclosed. HIPAA privacy laws not only apply to healthcare providers and the organizations they work for, but to any entity that may have access to healthcare information about a patient that—if it were to fall into the wrong hands—could present a risk of harm to the patient's finances or reputation.

156.     Furthermore, Defendant had a duty under Washington Rev. Code § 19.255.010, *et seq.*, to ensure that all customers' medical records and communications were kept confidential.

157.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

158.     Defendant's own conduct also created a foreseeable risk of harm to Plaintiffs and Class members and their Private Information.  Defendant's misconduct included failing to: (1) secure Plaintiffs and Class member's Private Information; (2) comply with industry standard security practices; (3) implement adequate system and event monitoring; and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach.

159.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class members' Private Information, and by failing to provide timely notice of the Data Breach.  The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

  a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information;

  b. Failing to adequately monitor the security of Defendant's networks and systems;

  c. Allowing unauthorized access to Class members' Private Information;

  d. Failing to detect in a timely manner that Class members' Private Information had been compromised; and

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

e. Failing to timely notify Class members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages

160. Through Defendant's acts and omissions described in this Complaint, including its failure to provide adequate security and failure to protect Plaintiffs and Class members' Private Information from being foreseeably captured, accessed, disseminated, stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiffs and Class members' Private Information during the time it was within Defendant's possession or control.

161. Defendant's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to failing to adequately protect the Private Information and failing to provide Plaintiffs and Class members with timely notice that their sensitive Private Information had been compromised.

162. Neither Plaintiffs nor the other Class members contributed to the Data Breach and subsequent misuse of their Private Information as described in this Complaint.

163. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members suffered damages as alleged above.

164. Plaintiffs and Class members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide lifetime free credit monitoring to all Class members.

## COUNT II
### BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
**(On Behalf of Plaintiffs and the Nationwide Class or, Alternatively, the Louisiana and Texas Subclasses)**

165. Plaintiffs fully incorporate by reference all of the above paragraphs, as though fully set forth herein.

166. Plaintiffs bring this claim for breach of third-party beneficiary contract against MCG Health in the alternative to Plaintiffs' claim for breach of implied contract.

CLASS ACTION COMPLAINT- 41

167.     MCC Health entered into a contract to provide services to Plaintiffs' respective medical providers.  Upon information and belief, this contract is virtually identical to the contracts entered into between MCG Health and its other medical provider customers around the country whose patients were also affected by the Data Breach.

168.     These contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their confidential medical information that MCG Health agreed to collect and protect through its services.  Thus, the benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties.

169.     MCG Health knew that if it were to breach these contracts with its customers, the customers' patients, including Plaintiffs and the Class, would be harmed by, among other harms, fraudulent transactions.

170.     MCG Health breached its contracts with the medical providers affected by this Data Breach when it failed to use reasonable data security measures that could have prevented the Data Breach.

171.     As foreseen, Plaintiffs and the Class were harmed by MCG Health's failure to use reasonable security measures to store patient information, including but not limited to the risk of harm through the loss of their personal information.

172.     Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

## COUNT III
### BREACH OF IMPLIED CONTRACT
**(On Behalf of Plaintiffs and the Nationwide Class or, Alternatively, the Louisiana and Texas Subclasses)**

173.     Plaintiffs fully incorporate by reference all of the above paragraphs, as though fully set forth herein.

174.     Plaintiffs bring this claim for breach of implied contract in the alternative to their breach of third-party beneficiary contract claim.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

175.   Through their course of conduct, Defendant, Plaintiffs, and Class members entered into implied contracts for the provision of healthcare data administration services, as well as implied contracts for the Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiffs and Class members' Private Information.

176.   Specifically, Plaintiffs entered into a valid and enforceable implied contract with Defendant when they first entered into the medical services contract with Defendant.

177.   The valid and enforceable implied contracts to provide medical guidance services that Plaintiffs and Class members entered into with Defendant include Defendant's promise to protect nonpublic Private Information given to Defendant or that Defendant created on its own from disclosure.

178.   When Plaintiffs and Class members provided their Private Information to Defendant in exchange for Defendant's services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

179.   Defendant solicited and invited Class members to provide their Private Information as part of Defendant's regular business practices. Plaintiffs and Class members accepted Defendant's offers and provided their Private Information to Defendant.

180.   In entering into such implied contracts, Plaintiffs and Class members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

181.   Class members who paid money to Defendant reasonably believed and expected that Defendant would use part of those funds to obtain adequate data security. Defendant failed to do so.

182.   Under implied contracts, Defendant and/or its affiliated providers promised and were obligated to: (a) provide secure medical guidance services to Plaintiffs and Class members' healthcare providers; and (b) protect Plaintiffs and Class members' Private Information provided to obtain the benefits of such services. In exchange, Plaintiffs and Class members agreed to pay money for these services, and to turn over their Private Information.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

183.    Both the provision of medical services and the protection of Plaintiffs and Class members' Private Information were material aspects of these implied contracts.

184.    The implied contracts for the provision of medical service contracts that include the contractual obligations to maintain the privacy of Plaintiffs and Class members' Private Information are also acknowledged, memorialized, and embodied in multiple documents, including (among other documents) Defendant's Data Breach notification letter and Defendant's relevant privacy policy documents.

185.    Defendant's express representations, including, but not limited to the express representations found in its privacy policy, memorializes and embodies the implied contractual obligation requiring Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiffs and Class members' Private Information.

186.    Consumers of medical services value their privacy, the privacy of their dependents, and the ability to keep confidential their Private Information associated with obtaining such services.  Plaintiffs and Class members would not have entrusted their Private Information to Defendant and entered into these implied contracts with Defendant without an understanding that their Private Information would be safeguarded and protected, nor would they have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

187.    A meeting of the minds occurred, as Plaintiffs and Class members agreed and provided their Private Information to Defendant and/or its affiliated healthcare providers and paid for the provided medical guidance services in exchange for, among other things, both the provision of healthcare and the protection of their Private Information.

188.    Plaintiffs and Class members performed their obligations under the contract when they paid for Defendant's services and provided their Private Information.

CLASS ACTION COMPLAINT- 44

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

189.    Defendant materially breached its contractual obligation to protect the nonpublic Private Information Defendant gathered when the information was accessed and exfiltrated by the Data Breach.

190.    Defendant materially breached the terms of the implied contracts, including, but not limited to, the terms stated in the relevant privacy policy. Defendant did not maintain the privacy of Plaintiffs and Class members' Private Information as evidenced by its notifications of the Data Breach to Plaintiffs and Class members. Specifically, Defendant did not comply with industry standards, standards of conduct embodied in statutes like Section 5 of the FTCA, or otherwise protect Plaintiffs and Class members' private information as set forth above.

191.    The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

192.    As a result of Defendant's failure to fulfill the data security protections promised in these contracts, Plaintiffs and Class members did not receive full benefit of the bargain, and instead received healthcare and other services that were of a diminished value to that described in the contracts. Plaintiffs and Class members, therefore, were damaged in an amount at least equal to the difference in the value between the healthcare with data security protection they paid for and the healthcare they received.

193.    Had Defendant disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, neither the Plaintiffs, Class members, nor any reasonable person would have purchased healthcare services from Defendant's affiliated providers, from which services Defendant directly benefits.

194.    As a direct and proximate result of the Data Breach, Plaintiffs and Class members will suffer actual damages and injuries, including without limitation the release and disclosure of their Private Information, the loss of control of their Private Information, the imminent risk of suffering additional damages in the future, disruption of their medical care and treatment, out of pocket expenses, and the loss of the benefit of the bargain they had struck with Defendant.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

195.     Plaintiffs and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

196.     Plaintiffs and Class members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class members.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiffs and the Nationwide Class or, Alternatively, the Louisiana and Texas Subclasses)**

197.     Plaintiffs fully incorporate by reference all of the above paragraphs, as though fully set forth herein.

198.     In providing their Private Information to Defendant, Plaintiffs and Class members justifiably placed a special confidence in Defendant to act in good faith and with due regard for the interests of Plaintiffs and Class members to safeguard and keep confidential that Private Information.

199.     Defendant accepted the special confidence Plaintiffs and Class members placed in it, as evidenced by its assertion that it is committed to protecting the privacy of  Plaintiffs' personal information as included in the Data Breach notification letter.

200.     In light of the special relationship between Defendant, Plaintiffs, and Class members, whereby Defendant became a guardian of Plaintiffs and Class members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for the benefit of its customers, including Plaintiffs and Class members for the safeguarding of Plaintiffs and Class members' Private Information.

201.     Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class members upon matters within the scope of its customer relationships, in particular, to keep secure the Private Information of its customers.

CLASS ACTION COMPLAINT- 46

202.    Defendant breached its fiduciary duties to Plaintiffs and Class members by failing to protect the integrity of the systems containing Plaintiffs and Class members' Private Information.

203.    Defendant breached its fiduciary duties to Plaintiffs and Class members by otherwise failing to safeguard Plaintiffs and Class members' Private Information.

204.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiffs and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and (vii) the diminished value of the services they paid for and received.

205.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiffs and Class members will suffer other forms of injury and/or harm, and other economic and non-economic losses.

## COUNT V
### Violation of the Washington Consumer Protection Act
### Wash. Rev. Code Ann. § 19.86.020, *et seq.*,
### (On Behalf of Plaintiffs and the Nationwide Class)

206.    Plaintiffs re-allege and incorporate by reference all of the above paragraphs, as though fully set forth herein.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

207.     Plaintiffs bring this cause of action pursuant to Federal Rule of Civil Procedure 23, which procedurally displaces any state procedural statutory ban on class actions under Wash. Rev. Code An. §§ 19.86.020, *et seq.*, ("WCPA")

208.     MCG Health is a "person," as defined by Wash. Rev. Code Ann. § 19.86.010(1).

209.     MCG Health advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code Ann. § 19.86.010 (2).

210.     MCG Health engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, including:

a.      failing to maintain adequate computer systems and data security practices to safeguard Private Information;

b.      failing to disclose that its computer systems and data security practices were inadequate to safeguard Private Information from theft;

c.      continued gathering and storage of Private Information and other personal information after Defendant knew or should have known of the security vulnerabilities of its computer systems that were exploited in the Data Breach;

d.      making and using false promises, set out in the relevant privacy notice, about the privacy and security of Private Information of Plaintiffs and Class Members, and;

e.      continued gathering and storage of PII and other personal information after Defendant knew or should have known of the Data Breach and before Defendant allegedly remediated the data security incident.

211.     These unfair acts and practices violated duties impose by laws, including but not limited to the FTC Act, HIPAA, and Washington Rev. Code § 19.255.010, *et seq.*

212.     The foregoing deceptive acts and practices were directed at consumers.

213.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the character of the services provided, specifically as to the safety and security of Private Information.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

214.    MCG Health's unconscionable commercial practices, false promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiffs and members of the Class, would attach importance to in making their decisions and/or conducting themselves regarding the services received from MCG Health.

215.    MCG Health engaged in the conduct alleged above, entering into transactions intended to result, and which did result, in the furnishing of medical guideline services to consumers, including Plaintiffs and Class Members.

216.    MCG Health engaged in, and its acts and omissions affect, trade and commerce, or the furnishing of services in the State of Washington.

217.    MCG Health's acts, practices, and omissions were done in the course of MCG Health's business of furnishing healthcare providers with software and guideline services in the state of Washington.

218.    As a direct and proximate result of MCG Health's multiple, separate violations of the WCPA, Plaintiffs and the Class Members suffered damages including, but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in MCG Health's possession and is subject to further unauthorized disclosures so long as MCG Health fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession, and; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## COUNT VI
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPCA")
### Tex. Bus. Code Ann. § 17.46(a), (b)(5) and (7), *et seq.*
### (On Behalf of Plaintiffs and the Texas Subclass)

219.    Plaintiffs fully incorporate by reference all of the above paragraphs, as though set forth herein.

220.    MCG Health is a "person" as defined by Tex. Bus. Code. Ann. § 17.46(b)(5).

221.    MCG Health advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined in Tex. Bus. Code Ann. §17.46(a).

222.    MCG Health engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the TDTPCA, including:

a.    By Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs and Texas Subclass members' Personal Information, which was a direct and proximate cause of the data breach;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the data breach

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and class members' PII, including duties imposed by the FTC Act.

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and class members' PII, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and class members' PII, including duties imposed by the FTC Act;

CLASS ACTION COMPLAINT- 50

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and class members' PII; and

g.  Omitting suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and class members' PII, including duties imposed by the FTC Act

223.  MCG Health's representations and omissions were material because they were likely to deceive consumers about the adequacy of MCG Health's data security and ability to protect the confidentiality of patients' PII.

224.  MCG Health acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and class members' rights. Numerous past data breaches in the healthcare industry put it on notice that its security and privacy protections were inadequate.

225.  MCG Health's conduct is injurious to the public interest because it violates a statute that contains specific legislative declaration of public interest impact, and/or injured persons and has the capacity to injure persons. Further, its conduct affected the public interest, including the thousands of Texans affected by the data breach.

226.  As a direct and proximate result of MCG Health's unfair or deceptive acts or practices, Plaintiffs and class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; imminent risk of fraud and identity theft; and loss of value of their PII.

227.  Plaintiffs and class members accordingly seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief civil penalties, and attorneys' fees and costs.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

### COUNT VII
**Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
La. Rev. Stat. Ann. §51:1401, *et seq.*
(On Behalf of Plaintiffs and the Louisiana Subclass)**

228.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

229.    MCG Health, Plaintiffs and the Louisiana Subclass members are "persons" within the meaning of La. Rev. Stat. Ann § 51:1402(1).

230.    MCG Health engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

231.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann § 51:1405(A). MCG Health participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

232.    MCG Health's actions as set forth above occurred in the conduct of trade or commerce.

233.    In the course of its business, MCG Health willfully failed to disclose and actively concealed the high likelihood that the Private Information had lost value, and otherwise engaged in activities with a tendency or capacity to deceive. MCG Health also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the storage of the Private Information.

234.    MCG Health knew that there was a high likelihood that the Private Information had been accessed or otherwise misused, but concealed all of that information.

235.    By failing to disclose that its customers' patients' information had been stolen in a timely manner, MCG Health engaged in deceptive business practices in violation of the Louisiana CPL.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

236.   MCG Health's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Louisiana Subclass members about the security and value of their private information.

237.   MCG Health intentionally and knowingly misrepresented materials facts regarding the Data Breach with the intent to mislead Plaintiffs and the Louisiana Subclass.

238.   MCG Health knew or should have known that its conducts violated the Louisiana CPL.

239.   As alleged above, MCG Health made material statements about the security of the patient data that its customers provide it with.

240.   MCG Health owed Plaintiffs a duty to disclose that patient information had been released without permission because MCG Health:

  a.   Possessed exclusive knowledge of the cyberattack;

  b.   Intentionally concealed the foregoing from Plaintiffs and the Louisiana Subclass; and/or

  c.   Made incomplete representations about the fact that the cyberattack had resulted in the loss of patient information while purposefully withholding material facts from Plaintiffs and the Louisiana Subclass about the events of the attack.

241.   MCG Health's fraudulent misrepresentations, omissions, and concealments as described herein were material to Plaintiffs and the Louisiana Subclass.

242.   Plaintiffs and the Louisiana Subclass suffered ascertainable loss caused by MCG Health's misrepresentations and its concealment of and failure to disclose material information. Had Plaintiffs and the Louisiana Subclass members known about the fact that their information had been lost, they would not have elected to give their information to MCG Health or pay the amount that they did for their healthcare services. Accordingly, Plaintiffs and the Louisiana Subclass members overpaid for the services that they received from MCG Health and did not receive the benefit of their bargain but for MCG Health's violations of the Louisiana CPL.

CLASS ACTION COMPLAINT- 53

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

243.    MCG Health had an ongoing duty to Plaintiffs and the Louisiana Subclass members to refrain from unfair and deceptive practices under the Louisiana CPL. All of MCG Health's customers' patients suffered ascertainable loss; to wit, the loss of the funds associated with the fees they paid for their healthcare services, as a result of MCG Health's deceptive and unfair acts and practices made in the course of MCG Health's business.

244.    MCG Health's violations present a continuing risk to Plaintiffs and the Louisiana Subclass members as well as to the general public. MCG Health's unlawful acts and practices complained of herein affect the public interest.

245.    As a direct and proximate result of MCG Health's violations of the Louisiana CPL, Plaintiffs and the Louisiana Subclass members have suffered injury-in-fact and/or actual damage.

246.    Pursuant to La. Rev. Stat. Ann § 51:1409, Plaintiffs and the Louisiana Subclass seek to recover actual damages in an amount to be determined at trial; treble damages for MCG Health's knowing violations of the Louisiana CPL; an order enjoining MCG Health's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat Ann. § 51:1409.

## <u>COUNT VIII</u>
## DECLARATORY RELIEF
### (On Behalf of Plaintiffs and the Nationwide Class or, Alternatively, the Louisiana and Texas Subclasses)

247.    Plaintiffs fully incorporate by reference all of the above paragraphs, as though fully set forth herein.

248.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

249.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiffs and Class members' PII, and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class members from future data breaches that compromise their Private Information. Plaintiffs and the Class remain at imminent risk that further compromises of their PII will occur in the future.

250.    The Court should also issue prospective injunctive relief requiring Defendant to employ adequate security practices consistent with law and industry standards to protect consumers' PII.

251.    Defendant still possesses the PII of Plaintiffs and the Class.

252.    To Plaintiffs' knowledge, Defendant has made no announcement that it has changed its data storage or security practices relating to the PII.

253.    To Plaintiffs' knowledge, Defendant has made no announcement or notification that it has remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

254.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach at MCG Health. The risk of another such breach is real, immediate, and substantial.

255.    The hardship to Plaintiffs and Class members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another data breach occurs at MCG Health, Plaintiffs and Class members will likely continue to be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

256.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at MCG

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Health, thus eliminating the additional injuries that would result to Plaintiffs and Class members, along with other consumers whose PII would be further compromised.

257.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that MCG Health implement and maintain reasonable security measures, including but not limited to the following:

    a.   Engaging third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on MCG Health's systems on a periodic basis, and ordering MCG Health to promptly correct any problems or issues detected by such third-party security auditors;

    b.   engaging third-party security auditors and internal personnel to run automated security monitoring;

    c.   auditing, testing, and training its security personnel regarding any new or modified procedures;

    d.   purging, deleting, and destroying Private Information not necessary for its provisions of services in a reasonably secure manner;

    e.   conducting regular database scans and security checks; and

    f.   routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant, as follows:

    A.   For an Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Class;

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

B.   For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs and Class members' Private Information, and from failing to issue prompt, complete and accurate disclosures to Plaintiffs and Class members;

C.   For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Data Breach;

D.   For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E.   Ordering Defendant to pay for no less than three (3) years of credit monitoring services for Plaintiffs and the Class;

F.   For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.   For an award of punitive damages, as allowable by law;

H.   For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

I.   Pre- and post-judgment interest on any amounts awarded; and

J.   Such other and further relief as this court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

//
//
//
//
//
//

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   RESPECTFULLY SUBMITTED AND DATED this 6th day of July, 2022.

2                           TERRELL MARSHALL LAW GROUP PLLC

3
                            By:  /s/ Beth E. Terrell, WSBA #26759
4                                Beth E. Terrell, WSBA #26759
                                 Email: bterrell@terrellmarshall.com
5
                            By:  /s/ Jennifer Rust Murray, WSBA #36983
6                                Jennifer Rust Murray, WSBA #36983
                                 Email: jmurray@terrellmarshall.com
7                                936 North 34th Street, Suite 300
                                 Seattle, Washington 98103-8869
8                                Telephone: (206) 816-6603
                                 Facsimile: (206) 319-5450
9

10                               Benjamin F. Johns (*pro hac vice forthcoming*)
                                 Email: bfj@chimicles.com
11                               Samantha E. Holbrook (*pro hac vice forthcoming*)
                                 Email: seh@chimicles.com
12                               CHIMICLES SCHWARTZ KRINER
                                  & DONALDSON-SMITH LLP
13                               One Haverford Centre
                                 361 Lancaster Avenue
14                               Haverford, Pennsylvania 19041
                                 Telephone: (610) 642-8500
15

16                               *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

CLASS ACTION COMPLAINT- 58

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com